KENNEDY, Justice.
The plaintiffs, Janet Watson and Watson Development Inc., (owned and controlled by Janet Watson), appeal from a summary judgment entered in favor of the defendants, Owens Cross Roads Water Authority (“OCRWA”); Bobby Salmon (OCRWA’s executive director, manager, and operator); and OCRWA’s directors, Wayne Clayton, Lloyd Pinkerton, and Danny Whorton.
A summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Aa.R.Civ.P. Once the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to present substantial evidence creating a genuine issue of material fact. Nipper v. Variety Wholesalers, Inc., 638 So.2d 778 (Ala.1994). In reviewing a summary judgment, we must view the evidence in a light most favorable to the nonmoving party. Viewed in that light, the evidence suggests the following facts:
Around July 1993, Watson contacted OCRWA regarding her interest in purchasing, through her corporation, certain real estate in order to develop a subdivision. She spoke with Salmon, who was executive director, manager, and operator of OCRWA, in order to find out if OCRWA had the capacity to provide water services for her contemplated subdivision. Salmon told Watson that OCRWA had more than enough water available to service the contemplated subdivision. Based on Salmon’s statements, Watson purchased the property for the contemplated subdivision on September 8,1993.
Watson specifically asked Salmon about a newspaper article she had read shortly before contacting OCRWA. The article had discussed water shortages in certain Madison County water systems, and it had mentioned OCRWA as one of those systems with shortages. Salmon assured Watson that there would be no problem with the availability of water: Salmon stated that the article was incorrect and that OCRWA had excess water and “had even been selling water to other systems.”
Around July 1993, Watson’s surveyor and her real estate agent contacted OCRWA on behalf of Watson to inquire about OCRWA’s supplying water to the contemplated subdivision. Both the surveyor and the real estate agent had read the newspaper article and were concerned with whether the water was available to service the property. An OCRWA representative assured both of them that OCRWA had sufficient storage to supply the contemplated subdivision with water and that the newspaper article was incorrect. After Watson purchased the property, the surveyor went to the October 7, 1993, OCRWA board meeting, and at that meeting the board promised to supply the water to Watson.
Watson alleges that OCRWA had been on notice since 1989 that it needed more storage facilities and, therefore, she says, OCRWA’s representation to her that it could provide water to the property was false. Watson presented a letter from the Aabama Department of Environmental Management (“ADEM”) to OCRWA dated July 7,1989, in which ADEM stated that-OCRWA’s “future plans should include the construction of an additional storage tank.” Another letter from ADEM to OCRWA, dated September 4, 1991, stated that OCRWA’s storage facilities were “deficient.” That letter also indicated that an employee of OCRWA had told an ADEM employee that OCRWA was making plans to add storage facilities.
The minutes from the OCRWA board meeting on February 4, 1992, indicate that OCRWA knew that it needed additional water storage; specifically, those minutes indi *1066 cate that at that meeting the board decided to hire an engineering firm to consider the storage problem. Minutes from the April 7, 1992, board meeting indicate that OCRWA “tabled” the idea of hiring an engineering firm. OCRWA never added extra storage.
The engineer who designed the OCRWA facility testified that the facility was “short on storage” in July 1993 when Watson first contacted OCRWA about providing water services. The engineer testified that the facility had been designed to service 300 customers, but that in July 1993 it was serving 1100 customers and nothing had been done to increase storage capacity.
By December 1993, OCRWA still had not extended water service to the real property in the contemplated subdivision. At a December 7, 1993, OCRWA board meeting, Watson was told that OCRWA did not have the capacity to service her contemplated subdivision. Watson expressed concern and distress about the lack of water service; the board responded by telling her that it would be able to have water service available for the property.
Thereafter, the defendants continued to represent that OCRWA would be able to provide water service for the contemplated subdivision. On March 24, 1994, OCRWA still did not have sufficient water storage capacity to service the contemplated subdivision. On that date Watson sued OCRWA, Salmon, and OCRWA’s directors (Clayton, Pinkerton, and Wharton), alleging fraud, promissory estoppel, negligence, wantonness, and breach of contract arising from OCRWA’s alleged inability to supply water. The trial court entered a summary judgment in favor of the defendants.
In support of their summary judgment, the defendants argue that it was undisputed that OCRWA had an ample water supply and was providing water for other systems. They also argue that Watson could not have justifiably relied on any statements made by OCRWA, because under State regulations Watson, in order to develop her subdivision, had to have an engineer present a proposed water supply plan to the OCRWA board and have the board approve the plan in writing.
We disagree with the defendants’ first argument. The evidence regarding OCRWA’s water supply is disputed. Watson presented substantial evidence that OCRWA lacked sufficient water to supply the contemplated subdivision; therefore, the question whether OCRWA had sufficient water should be determined by the factfinder at trial. The determination of this fact is necessary to all of Watson’s claims against the defendants. We also disagree with the defendants’ argument that Watson could not have justifiably relied on their statements. There is a genuine issue of material fact as to whether Watson could have justifiably relied on the representation; Watson presented substantial evidence that Salmon and the board members managed, controlled, and operated OCRWA and knew whether it had an adequate water supply. We note that Watson is arguing that when she purchased the real estate she was relying on the defendants’ statements that adequate water was available for the contemplated subdivision. Watson was not developing the subdivision when she relied on the statements; rather, she contends that in deciding to buy the property she relied on the statements concerning water availability.
Basically, the defendants argue that Watson had to submit a proposed engineering plan for supplying water to the contemplated subdivision and had to obtain the board’s approval of that plan before she could rely on the statements. When Watson purchased the property, she had not designed the subdivision or its water supply system. She says she relied on the statements in buying the property. The defendants presented no evidence that any State planning regulation required Watson to present a water supply plan before she purchased the property for the contemplated subdivision. We agree with Watson’s analogy: If we accept the defendants’ argument here, then we should hold that, if a buyer of an automobile ultimately could not get a license to operate it, then the buyer could not be found to have justifiably relied upon a misrepresentation that the seller had good title to the car.
*1067 Based on the foregoing, we reverse the summary judgment on all claims and remand the case.
REVERSED AND REMANDED.
SHORES, HOUSTON, and BUTTS, JJ., concur.
COOK, J., concurs in the result.
HOOPER, C.J., and MADDOX, J., dissent.